UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| WLP CAPITAL INC. | CIVIL ACTION |
| VERSUS | NO. 23-457 |
| DUSTIN PORTE, ET AL. | SECTION: "P" (3) |

ORDER AND REASONS

Before the Court is Defendant Dustin Porte's Motion to Dismiss Under Rule 12(b)(6) (R. Doc. 21), Defendant Paul A. Lea, Jr.'s Motion to Dismiss Under Rule 12(b)(6) (R. Doc. 24), and Defendant Patriot Group Services, Inc.'s Motion to Dismiss Under Rule 12(b)(6) (R. Doc. 41). Plaintiff opposes each of the motions.[1] For the following reasons, Porte and Lea's motions are **GRANTED IN PART** and **DENIED IN PART**, and Patriot Group Services, Inc.'s motion is **DENIED**.

I.  BACKGROUND

Plaintiff, WLP Capital Inc., brings this revocatory action pursuant to Louisiana Civil Code article 2036 against defendants, Dustin Porte, Patriot Group Services, Inc. ("PGS"), and Paul A. Lea, Jr.[2] WLP Capital alleges that, in 2019, WLP Capital obtained judgments in its favor and against Porte and PGS for a sum of $477,580.45, together with post-judgment interest. WLP Capital further alleges that at all relevant times since the entry of judgment both Porte and his entity, PGS, are and have been insolvent. Porte is the President and CEO of PGS and has complete control over its business affairs.

In December 2022, WLP Capital conducted a Judgment Debtor Exam of Porte, in his individual capacity, during which WLP Capital discovered PGS received death benefits in the

---

[1] R. Docs. 30, 31, 43.
[2] R. Doc. 13.

amount of $611,929.09 in June 2022 in connection with a life insurance policy PGS carried on one of its employees who died earlier that year. WLP Capital also learned that Porte withdrew a portion of these death benefits, namely $250,000.00, from the PGS operating account and transferred the funds to Lea on July 6, 2022. WLP Capital alleges PGS received no value or consideration in return.

According to the Complaint, Lea is the registered agent for PGS and has intermittently acted as Porte and PGS's attorney and accountant for the last fifteen years. In addition, Lea and Porte maintain a lessor-lessee relationship. In 2012, Porte and his wife allegedly sold Lea their personal residence, which they now lease from him, but WLP Capital contends Lea never made any payment in exchange for the property. Nevertheless, Porte and Lea entered into a lease agreement, dated August 1, 2012, that allowed Porte and his wife to continue residing at the property in exchange for $2,500.00 per month. The lease was for a twelve-month term and has automatically renewed every three months since the expiration date of the original term.

On or about September 15, 2022, more than two months after Porte provided Lea with the $250,000.00 from the PGS operating account, Porte and Lea executed an Addendum to the lease agreement, extending the lease for a 10-year period commencing on October 1, 2022, and extending through the last day of September 2032, in exchange for $250,000.00. WLP Capital alleges that on the date the cash from PGS's account was delivered to Lea and on the date Porte and Lea executed the Addendum, both PGS and Porte owed WLP Capital a sum of $477,580.48, plus post-judgment interest. WLP further alleges that Porte delivered the $250,000.00 in cash to Lea with the intent of depriving WLP Capital of the right it has as Porte and PGS's creditor to execute on their property.

WLP Capital therefore seeks to annul the transfer of the funds from PGS to Lea (Count I) and to annul the Addendum executed by Porte and Lea (Count II) pursuant to Louisiana Civil Code article 2036. In the alternative, WLP Capital seeks a declaration that the Addendum is a simulation or sham (Count III).[3] Defendants Porte and Lea filed motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenging each of Plaintiff's claims. Defendant PGS likewise filed a motion to dismiss pursuant to Rule 12(b)(6), but PGS only challenges Count I.

## II. LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough facts "to state a claim for relief that is plausible on its face."[4] A claim is "plausible on its face" when the pleaded facts allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged."[5] A court must accept the complaint's factual allegations as true and must "draw all reasonable inferences in the plaintiff's favor."[6] The court need not, however, accept as true legal conclusions couched as factual allegations.[7] To be legally sufficient, a complaint must establish more than a "sheer possibility" the plaintiff's claims are true.[8] If it is apparent from the face of the complaint that an insurmountable bar to relief exists, and the plaintiff is not entitled to relief, the court must dismiss the claim.[9] The court's review is limited to the complaint and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint.[10]

---

[3] The Complaint contains a clerical error that refers to this count as Count II despite it being the third count in the Complaint. *See* R. Doc. 13 at p. 12. The Court will refer to this count as Count III for ease of reference.
[4] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)).
[5] *Id.*
[6] *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009).
[7] *Iqbal,* 556 U.S. at 678.
[8] *Id.*
[9] *Lormand*, 565 F.3d at 255–57.
[10] *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).

### III.  LAW AND ANALYSIS

In Count I of the Complaint, WLP Capital seeks to annul the transfer of funds from PGS's operating account to Lea.  Defendants Porte, Lea, and PGS each contest the plausibility of WLP Capital's claim in Count I by portraying Count I as a challenge to the transfer of funds from PGS to Porte.[11]  But the Complaint as well as WLP Capital's opposition memoranda make clear that Count I indeed alleges the money was transferred directly from PGS to Lea.[12]  In other words, under the theory WLP Capital asserts in Count I, Porte was involved in the physical transfer of the funds to Lea, and the ownership of those funds never actually transferred to Porte.  Defendants' challenges to Count I therefore fail because they have misconstrued the allegations in the Complaint and their arguments are inapplicable.[13]

In Count II of the Complaint, WLP Capital seeks to annul the Addendum to the lease executed by Porte and Lea such that all cash proceeds transferred pursuant to the terms of the Addendum must be returned.  This revocatory action is brought pursuant to article 2036 of the Louisiana Civil Code, which provides that "[a]n obligee has a right to annul an act of the obligor, or the result of a failure to act of the obligor, made or effected after the right of the obligee arose, that causes or increases the obligor's insolvency."[14]  Defendants Porte and Lea argue that WLP

---

[11] Indeed, all three defendants argue Count I must be dismissed because WLP Capital has not plausibly alleged how it was prejudiced by the transfer of funds from PGS to Porte.
[12] R. Doc. 13 at ¶ 45 ("Porte and Lea's action in withdrawing the insurance proceeds from PGS's bank account and delivering them to Lea, with PGS receiving no value in return, caused PGS to be insolvent or deepened its insolvency.").
[13] The Court recognizes Counts I and II are seemingly contradictory because one relies on the direct transfer of the funds from PGS to Lea, and the other relies on the transfer from Porte to Lea pursuant to the terms of the Addendum.  Indeed, for Count II to stand and for the revocation of the Addendum to result in the return of the funds, the funds must have been transferred to Lea *pursuant to the terms of the Addendum*, which means they must have been transferred *from Porte* to Lea, which necessarily means ownership of the funds had to have been transferred from PGS to Porte before they were transferred to Lea.  But Count I hinges on the allegation that the funds were transferred directly *from PGS* to Lea. Ultimately, these appear to be alternative claims for relief, and the applicable claim will depend on whether the funds ever transferred ownership from PGS to Porte—a fact to be determined through discovery in this case and which the Court cannot resolve at this stage of the proceedings.
[14] LA. CIV. CODE art. 2036.

Capital has failed to plead the requisite factual elements of a revocatory action under article 2036 because WLP Capital has not plausibly alleged that the transfer of funds from Porte to Lea pursuant to the terms of the Addendum caused or increased Porte's insolvency.  First, they take issue with the sufficiency of the allegations contained in the Complaint.  Next, they contend the Complaint recognizes that Porte and Lea entered a 10-year lease extension by which Porte paid $250,000.00 in exchange for the right of occupancy for that 10-year period. Thus, they argue, the Addendum did not cause or increase Porte's insolvency as an obligor because it added an asset (the right of occupancy) to Porte's personal balance sheet.

Here, the Complaint states that at all relevant times since the entry of judgment against him Porte is and has been insolvent.[15]  The Complaint further alleges Porte has no assets of significant value to satisfy the judgment and that if the Addendum is enforced according to its terms, it will increase Porte's insolvency.[16]  Accepting these allegations as true, WLP Capital has pleaded enough facts to state a claim for relief that is plausible on its face.[17] As to Porte and Lea's arguments regarding the balance sheet effects of the Addendum, these are factual disputes that are inappropriate for the Court's consideration at the motion to dismiss stage.  Indeed, even assuming Porte's right of occupancy is an asset WLP Capital could seize to satisfy the judgment such that the right of occupancy has any impact on Porte's solvency for purposes of this case,[18] the fair

---

[15] R. Doc. 13 at ¶ 9.
[16] *Id.* at ¶ 42.
[17] With respect to the allegation that the Addendum *will* increase Porte's insolvency if it is enforced according to its terms, Porte argues this relates to Porte's *future* financial condition and is therefore irrelevant to a revocatory action. The Court does not read this allegation so narrowly. Rather, the Court draws all reasonable inferences in WLP Capital's favor and reads this allegation in light of the fact that the Addendum is currently being challenged by WLP Capital such that WLP Capital is relying on the annulment of the Addendum, which would return the funds back to Porte, but in the event WLP Capital's challenge fails and the Addendum remains in place, the Addendum will increase Porte's insolvency and WLP Capital will then have no other avenue to recover the debts owed by Porte.
[18] *See* LA. CIV. CODE art. 2037 ("An obligor is insolvent when the total of his liabilities exceeds the total of his fairly appraised assets.").

5

market value of a 10-year, pre-paid right of occupancy that is by its own terms a personal right granted to Porte and his spouse only[19] remains to be determined.

And finally, the Court rejects Lea's separate argument that Porte's lease obligation pre-dated the WLP Capital debt, thus rendering the $250,000.00 transfer to be a payment on an already-existing obligation such that it could not cause or increase Porte's insolvency. Assuming the $250,000.00 transfer was payment for pre-paid rent pursuant to the terms of the Addendum, this obligation did not come into existence until the parties executed the Addendum. Prior to the execution of the Addendum, Porte's obligations under the original lease came into existence on a monthly basis in the amount of $2,500.00 per month and were subject to renewal or termination every 3 months.[20] Thus, according to the allegations of the Complaint and the documents attached thereto, the $250,000.00 transfer was not payment for an obligation that preceded Porte's obligation to WLP Capital.[21] Porte and Lea's challenges to Count II therefore fail.

In Count III of the Complaint, WLP Capital alternatively pleads the Addendum should be declared a simulation or sham, entered into with the intent to hide cash and deprive WLP Capital of the right it has as a creditor to execute on the funds transferred to Lea as "pre-paid rent" and should therefore be declared null, rescinded, and set aside. Count III merely incorporates all allegations in the preceding paragraphs. Porte and Lea challenge Count III, arguing it contains nothing more than conclusory assertions and also that the allegations in the Complaint

---

[19] *See* R. Doc. 13-4.
[20] *See* R. Doc. 13-1 at ¶ 17; R. Doc. 13-3.
[21] The case Lea cites for this proposition is inapposite. *See* R. Doc. 24-1 at n.39. In *In re Gulf Fleet Holdings, Inc.*, 491 B.R. 747, 765–766 (Bankr. W.D. La. 2013), Gulf Fleet entered into certain agreements more than three years prior to the filing of its bankruptcy petition that defined and fixed Gulf Fleet's obligation to pay specific fees, expense reimbursements, and commissions. The Court found that although the Complaint alleged Gulf Fleet was insolvent at the time it made payments pursuant to these agreements, the payments were made in satisfaction of an antecedent debt and thus, by definition, would not have increased Gulf Fleet's insolvency. *Id.* at 766–67. Here, based on the facts alleged in the Complaint, Porte had no obligation to pay Lea up-front for the right of occupancy for the next 10 years until he and Lea executed the Addendum in September 2022. Meanwhile, WLP Capital obtained its judgment against Porte in May 2019, and the judgment was made executory in this District in August 2019. R. Doc. 13 at ¶ 8.

acknowledge consideration was provided for the Addendum and, therefore, it cannot be set aside as a simulation. The Court agrees. Without more, the Court is unable to find that WLP Capital has plausibly alleged in the alternative that the Addendum is a simulation or a sham.

Under Louisiana Civil Code article 2026, "[a] simulation is absolute when the parties intend that their contract shall produce no effects between them. That simulation, therefore, can have no effects between the parties." The revision comments to article 2026 provide that "[a]n example of absolute simulation is an act whereby the parties make an apparent sale when they actually intend that the vendor will remain owner."[22] The Louisiana jurisprudence historically referred to these acts as "'sham transactions,' that is, acts intended by the parties to have no effect at all."[23]

In its opposition memoranda, WLP Capital points out that since Lea purchased the property in 2012 Porte has remained the occupant of the property and that nothing changed when Lea and Porte executed the Addendum in 2022. WLP Capital also points out that it alleged the $250,000.00 transfer to Lea occurred months before the Addendum was executed. Thus, WLP argues, this gap in time between the transfer of cash and the execution of the Addendum shows they were not part of the same transaction and that the transfer was merely to place the cash beyond the reach of creditors. WLP Capital then argues Porte and Lea have failed to prove that the Addendum was intended to have any effect between the parties or that any consideration was actually given in return for the cash.

As an initial matter, at this stage, it is WLP Capital's burden to allege enough facts to state a claim for relief that is plausible on its face.[24] And WLP Capital failed to plausibly allege the

---

[22] LA. CIV. CODE art. 2026 cmt. (a).
[23] *Id.*
[24] *Iqbal,* 556 U.S. at 678.

7

Addendum had no effect between the parties or that no consideration was given in return for the funds. For example, WLP Capital relies on the fact that "nothing changed" when Porte and Lea executed the Addendum because Porte and his wife occupied the property both prior to and after the execution of the Addendum. But Porte's continued occupancy of the home is precisely what was contemplated in the Addendum. And although WLP Capital also alleged Lea never paid Porte and his wife for the sale of the home in 2012, WLP Capital does not allege, for example, that Porte and his wife have been living in the home rent-free since 2012, or that Porte and his wife are continuing to pay their rent obligation under the original lease despite having executed the Addendum. Thus, without more, WLP Capital has not alleged any facts that would allow the Court to infer that Porte and Lea never intended for the Addendum to have any effect between them such that Porte (or PGS) retained ownership of the $250,000.00. WLP Capital has therefore failed to allege enough facts to support its claim that the Addendum is an absolute simulation, and WLP Capital did not make any attempt to argue it has plausibly alleged a relative simulation.[25] Accordingly, the Court must dismiss WLP Capital's alternative claim that the Addendum be declared a simulation or sham. To the extent WLP Capital can amend the defects discussed herein, WLP Capital shall have 14 days from the date of this Order to do so.

## IV.   CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that Defendant Dustin Porte's Motion to Dismiss Under Rule 12(b)(6) (R. Doc. 21) is **GRANTED IN PART** and **DENIED IN PART**, as set forth herein.

---

[25] *See* LA. CIV. CODE art. 2027 ("A simulation is relative when the parties intend that their contract shall produce effects between them though different from those recited in their contract. A relative simulation produces between the parties the effects they intended if all requirements for those effects have been met.").

**IT IS FURTHER ORDERED** that Defendant Paul A. Lea, Jr.'s Motion to Dismiss Under Rule 12(b)(6) (R. Doc. 24) is **GRANTED IN PART** and **DENIED IN PART**, as set forth herein.

**IT IS FURTHER ORDERED** that Defendant Patriot Group Services, Inc.'s Motion to Dismiss Under Rule 12(b)(6) (R. Doc. 41) is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff WLP Capital's claim to declare that the Addendum is a simulation or a sham[26] is **DISMISSED WITHOUT PREJUDICE**.  To the extent WLP Capital can cure the defects discussed herein, WLP Capital shall have 14 days from the date of this Order to file an amended complaint.

New Orleans, Louisiana, this 25th day of September 2024.

                                      **DARREL JAMES PAPILLION**
                                      **UNITED STATES DISTRICT JUDGE**

---

[26] R. Doc. 13 at p. 12.